UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

**LIGHTING PARTNERS JAX**,
**INC., d/b/a KENROY HOME**

      **Plaintiff,**

v.                                 Case No.: 3:21-CV-00399-TJC-PDB

**SPS COMMERCE, INC.,**

      **Defendant.**

## DEFENDANT'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

Defendant SPS Commerce, Inc. ("SPS") respectfully submits this Motion to Dismiss and Memorandum of Law in support of its motion to dismiss the Complaint of Plaintiff Lighting Partners Jax, Inc., d/b/a Kenroy Home, filed April 14, 2021, (Dkt. #1), pursuant to the *forum non conveniens* doctrine and Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The parties agreed that any litigation related to their relationship, including this case, would be brought in Minnesota, not Florida. This is plain from the contract that is the lynchpin of Plaintiff's claims, which contains the following forum-selection clause requiring this case to be litigated in Minnesota: "The exclusive jurisdiction and venue for any litigation arising out or *related to this Agreement* shall

be in the federal or state courts located in Hennepin County, Minnesota." (Compl., Ex. B, p. 5.) Because Plaintiff's claims arise out of or relate to their contractual relationship, the Court should dismiss the Complaint based on *forum non conveniens*.

If the Court reaches the merits, it should dismiss Plaintiff's Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim because Plaintiff fails to satisfy heightened pleading requirements. In addition, the alleged deceptive acts and practices constitute non-actionable puffery, promises of future performance, and the legitimate enforcement of billing terms set forth in the mutually agreed contracts. Accordingly, the Court should dismiss Plaintiff's FDUTPA claim with prejudice.

## BACKGROUND

Plaintiff is a consumer products company that receives at least 900 product orders each day. (Compl. ¶¶ 8-9.) To fulfill these orders, Plaintiff uses Enterprise Resource Planning ("ERP") software. (Compl. ¶ 10.) In December 2018, Plaintiff (1) was upgrading its ERP software to Oracle Net Suite; (2) wished to work with Geodis, a Third-Party Logistics ("3PL") provider; and (3) engaged SPS to provide Electronic Data Interchange ("EDI") services. (Compl. ¶¶ 12-13.)

The parties' first contract was signed on December 18, 2018. (Compl. ¶ 17; Exs. A, B.) Although Plaintiff alleges that the parties agreed that SPS would deliver the conversion by September of 2019, no such language appears in the parties' first contract. (*Compare* Compl. ¶ 18; Exs. A, B.) Rather, the parties expressly agreed and understood that "[t]he tasks, timelines, data types, volumes and pricing contained

within the Scope are SPS's estimates based upon the Customer's representations and descriptions of the nature of the project." (Compl. Ex. B, p. 1.)

In August 2019, SPS was apprised that Geodis—not Plaintiff—would be responsible for shipping Plaintiff's products, so SPS issued a new contract to Plaintiff that reflected this new information. (Compl. ¶ 19; Ex. C.) Plaintiff's chief financial officer confirmed this change: "the Geodis component was not in scope until October [2019], which is correct from the SPS paperwork point of view." (Compl. Ex. E.) SPS performed under the new contract and began testing in September and October 2019. (Compl. ¶ 21.)

Thereafter, the project faced various challenges and its ultimate success required cooperation between and among Plaintiff, SPS, Geodis, and Plaintiff's trading partners. On January 29, 2020, Plaintiff's chief executive officer acknowledged these difficulties and challenges.

> We fully understand the need for all parties involved to be responsive in order to keep this project moving. I have reached out to Geodis with a similar plea for priority on this project, and they assured us that they will not be the party we will have to be waiting on to meet our next deadline. It is extremely difficult to manage a project while relying on multiple 3rd parties to communicate [and] meet deadlines before next steps can be taken.

(Compl. Ex. E.) During 2020, SPS provided Plaintiff with various project plans and proposals to get the project back on track. (Compl. Exs. F, G.) To no avail. By May 27, 2020, SPS placed the project on hold because the other parties were not discharging their project obligations or otherwise engaged:

> We are testing the warehouse order with your 3PL. A response on the test order is on our critical path and we have not heard from them since 3/17. Andrea Thul, the SPS project manager has been following up with the team (Bert, Glenn, and Tim) on a weekly basis but has not received a response back since March. Because of this she actually sent a notice today that the project was being placed on hold due to the lack of response. In order for us to move forward we need your 3PL to reengage in the project.

(Compl. Ex. F.) The project never got back on a track and Plaintiff decided to work with a different EDI provider to complete it. (Compl. ¶ 31.)

## STANDARD OF REVIEW

SPS seeks dismissal both under the doctrine of *forum non conveniens* and Federal Rule of Civil Procedure 12(b)(6). Generally, the party seeking dismissal for *forum non conveniens* must show "(1) an adequate alternative forum; (2) public and private factors weigh in favor of dismissal; and (3) the plaintiff can reinstate her lawsuit in the alternative forum without undue inconvenience or prejudice." *Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd*, 722 F. App'x 870, 883 (11th Cir. 2018). But that analysis completely changes in the face of a forum-selection clause. First, the burden shifts to "the plaintiff to show that dismissal of the complaint is unwarranted." *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016). Second, the Court must "find that the *forum non conveniens* private factors entirely favor the selected forum." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1029 (11th Cir. 2014). Thus, the Court may consider only public interest factors, but "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in

unusual cases." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013).

On a Rule 12(b)(6) motion to dismiss, the Court must accept as true all of the allegations contained in the Complaint, and although the Complaint need not contain detailed factual allegations, Plaintiff must provide sufficient factual allegations supplied to show a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-61 (2007). This requires a Plaintiff to do more than plead the bare elements of a cause of action. *Ashcroft v. Iqbal,* 556 U.S. 662, 687 (2009).

Plaintiff, however, must do even more with her FDUTPA claim. This is because Plaintiff's FDUTPA claim is grounded in fraud—the Complaint unambiguously bottoms the FDUTPA claim on misrepresentations ("Defendant falsely represented . . . ," "materially false statements and omissions," etc. (Compl. ¶¶ 48, 52))—making it subject to the same heightened standard as a fraud claim. *See PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*, 2013 WL 12172912, at *6 (M.D. Fla. Aug. 28, 2013) (Schlesinger, J.) ("[T]he Middle District of Florida has consistently held that those FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s heightened pleading requirements."); *see also Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC*, 2020 WL 5350303, at *4 (M.D. Fla. Sept. 4, 2020) (Covington, J.).

Federal Rule of Civil Procedure 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud." This requirement "serves an important purpose in fraud actions by alerting defendants to the precise misconduct

with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (citations and internal quotations omitted). Accordingly, Plaintiff's FDUTPA claim must at a minimum "allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

## ARGUMENT

I.  **The Court Should Enforce the Mandatory Forum-Selection Clause and Dismiss Plaintiff's Complaint.**

Plaintiff waived its right to bring suit in this Court when it signed the Agreement, which contains an unambiguous mandatory forum-selection clause. *See* Dkt. #1-2 at 6; *Cornett v. Carrithers*, 465 F. App'x 841, 843 (11th Cir. 2012) ("One hallmark of a mandatory clause is the use of the imperative term 'shall,' which prescribes a 'requirement.'"). In the Eleventh Circuit, such a clause "carries near-determinative weight." *GDG Acquisitions*, 749 F.3d at 1028. "'Only under extraordinary circumstances unrelated to the convenience of the parties' should a court decline to enforce a forum-selection clause." *Stiles*, 637 F. App'x at 562 (quoting *Atl. Marine*, 571 U.S. at 62). There are no extraordinary circumstances here.

As a starting point, "forum selection clauses are presumptively valid and enforceable." *Ponte Vedra Gifts & Accessories Co., LLC v. APL Logistics Ltd*, 2016 WL

2854207, at *1 (M.D. Fla. May 16, 2016) (Corrigan, J.). That presumption is confirmed in this case by Plaintiff's attempt to enforce the terms of the contract. The forum-selection clause is one of those terms and receives the same respect as any provision Plaintiff seeks to enforce.

The only question for the Court, then, is whether the public interest factors overwhelmingly weigh in favor of overriding the parties' contractual choice of forum. They don't, and it is not even close. There are no greater administrative difficulties stemming from court congestion in Minnesota than here (in fact, the Middle District of Florida has one of the heaviest caseloads in the country); the dispute involves a Minnesota-based defendant charged with misconduct taking place from its headquarters in Minnesota, so Minnesota has a greater interest than Florida in deciding the controversy; because the contracts call for the application of Minnesota law, the interest in trying a diversity case in a forum that is familiar with the law favors a Minnesota court; and a Minnesota forum avoids sticky conflict of law issues arising from the choice-of-law clause in the contracts. *See Kolawole v. Sellers*, 863 F.3d 1361, 1372 (11th Cir. 2017) (setting forth public interest factors).

Nor is Plaintiff's FDUTPA claim sufficient to override the forum-selection clause. *See Carrigg v. Gen. R.V. Ctr., Inc.*, 2018 WL 5904447, at *9–10 (M.D. Fla. Nov. 9, 2018) (Howard, J.) (rejecting plaintiffs' argument that their FDUTPA claim invalidated the forum selection clause); *see also Davis v. Avvo, Inc.*, 2011 WL 4063282, at *4 (M.D. Fla. Sept. 13, 2011) (Whittemore, J.) (enforcing forum-selection clause even in presence of FDUTPA claims); *Pods, Inc. v. Paysource, Inc.*, 2006 WL 1382099,

at *4 n.5 (M.D. Fla. May 19, 2006) (Whittemore, J.) (Florida residents' interest in seeking that violations of a FDUTPA claim be redressed "are not sufficient to overcome [a] forum selection clause."); *SAI Ins. Agency, Inc. v. Applied Sys., Inc.*, 858 So. 2d 401, 404 (1st DCA Fla. 2003) ("We decline to construct a rule of public policy that would completely abrogate language selected by the parties to a contract."); *World Vacation Travel v. Brooker*, 799 So. 2d 410, 412-13 (3d DCA Fla. 2001) (enforcing forum-selection clause because "the claims arise directly from the agreement, as well as due to the nature of the commercial relationship of the parties as it relates to the agreement itself"). If Plaintiff has an FDUTPA claim—and that is a dubious proposition for the reasons explained below—there is no reason Plaintiff cannot advance it in a Minnesota forum.

In sum, this is not one of the "rare" cases where the public-interest factors defeat a motion to enforce a valid forum-selection clause. *Smith v. Oasis Legal Fin., LLC*, 2017 WL 4922271, at *6 (M.D. Fla. Oct. 31, 2017) (Covington, J.). The Court should, therefore, dismiss Plaintiff's Complaint without prejudice so that it can be refiled in a state or federal court in Hennepin County, Minnesota. *See Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 700 (11th Cir. 2018) (affirming dismissal due to forum selection clause selecting "state or federal court" in Pennsylvania); *Aviation*, 722 F. App'x at 887 (affirming dismissal due to forum selection clause); *Stiles*, 637 F. App'x at 562 (same).

## II. Plaintiff's FDUTPA Claim Should be Dismissed.

Plaintiff alleges misrepresentations and deceptive practices that amount to nothing more than non-actionable puffery, promises of future performance, and enforcement of billing terms set forth in the mutually agreed contracts. Accordingly, the Court should dismiss Plaintiff's FDUTPA claim with prejudice.

To state a claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201-.213, Plaintiff must allege three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Kertesz v. Net Transactions, Ltd.*, 635 F.Supp. 2d 1339, 1348 (S.D. Fla. 2009) (*quoting City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008). "Deception occurs if there is a 'representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances to the consumer's detriment.'" *Cardenas v. Toyota Motor Corp.*, 418 F.Supp. 3d 1090, 1098 (S.D. Fla. 2019) (citations omitted). "A plaintiff must show that a reasonably objective person in the same circumstances would have been deceived." *Angelo v. Parker*, 275 So. 3d 752, 755 (Fla. 1st DCA 2019). "[A]n unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-cv-2419, 2021 WL 734575 at *10 (M.D. Fla. Feb. 25, 2021) (Covington, J.) (citations and quotation marks omitted).

A deception or fraud claim under the FDUTPA requires a "showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable

relying consumer.'" *Zlotnick v. Premier Sales Group, Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen.*, 761 So. 2d 1256, 1263 (3d DCA Fla. 2000)).  Although a plaintiff may predicate an FDUTPA claim on the same set of facts that supports its breach of contract claim, the plaintiff must show "that the *acts underlying* the breach of contract are, by themselves, unfair or deceptive."  *Rebman v. Follett Higher Educ. Gr., Inc.,* 575 F.Supp.2d 1272, 1279 (M.D. Fla. 2008) (Antoon, II, J.).

Plaintiff alleges that "[SPS] falsely represented to [Plaintiff] that it would be able to provide sufficient EDI services and transfer the Enterprise Resource Planning software to Oracle NetSuite, but did not follow through with its assurances," (Compl. ¶ 48), and cites four examples:

1. SPS charged Plaintiff for services SPS was not providing;
2. SPS represented that "it is a leader in the EDI services industry, capable of completing the subject project";
3. SPS refused to reimburse Plaintiff "for the time period SPS was not providing services"; and
4. SPS represented to Plaintiff that "[SPS] would be able to provide the agreed-upon services without providing same."

(Compl. ¶ 49.)  Allegations (1) and (3) are billing actions taken by SPS and allegations (2) and (4) are SPS's alleged misrepresentations.

### A. Plaintiff's Fail To Plead The Who, When, Where, And How Of The Alleged Misrepresentations.

To the extent that Plaintiff alleges that SPS made false and deceptive statements, Plaintiff has failed to satisfy Rule 9(b)'s heightened pleading requirements.  Simply put, Plaintiff has failed to identify *who* made the allegedly false

statements, *when* they were made, *where* they were made, and *how* they were made. *See Am. Dental Ass'n*, 605 F.3d at 1291. For this reason alone, Plaintiff's FDUTPA claim should be dismissed to the extent premised on allegedly false statements of fact.

### B. The Alleged Misrepresentations Are Also Not Actionable.

#### 1. SPS's Alleged Statements About Its Abilities and Being A "Leader" In the Industry Are Not Actionable.

Even if the Court were to ignore the heightened pleading standards, Plaintiff's FDUTPA claim fails on the merits. Statements about SPS's capabilities and experience, or that SPS is a "leader in the EDI services industry" are non-actionable puffery. (Compl. ¶ 49(b).) As the Southern District of New York has noted, general statements about one's abilities or being a "leader" in a market are non-actionable puffery:

> The statements that Sequans "believe[s] we have a strong position in the WiMAX market," and "believe[s] we are better positioned to drive our roadmap to meet those needs" are non-actionable. *See In re Xinhua*, 2009 WL 464934, at *8 ("To the extent that Plaintiffs' allegation focuses on the adjectives used to describe the management team, such as 'strong,' 'experienced,' and 'capable,' these soft adjectives are nothing more than puffery, which is not actionable under the securities laws." (*citing Rombach*, 355 F.3d at 174)); *In re Sierra Wireless, Inc. Sec. Litig.*, 482 F.Supp.2d 365, 377 (S.D.N.Y.2007). Similarly, Sequans's statement that "we ... are an early ***leader*** in the LTE market" is also a non-actionable statement of puffery. *See Rombach v. Chang*, No. 00 Civ. 958(SJ), 2002 WL 1396986, at *5 (E.D.N.Y. June 7, 2002) aff'd 355 F.3d 164 (2d Cir.2004) (emphasis added).

*Johnson v. Sequans Commc'ns S.A.*, No. 11-CIV-6341PAC, 2013 WL 214297, at *14 (S.D.N.Y. Jan. 17, 2013) (emphasis added). This limitation applies equally to claims

under the FDUTPA—such statements are not actionable. *See KeyView Labs, Inc. v. Barger,* 2020 WL 8224618, at *10 (M.D. Fla. Dec. 22, 2020) (Porcelli, J.) ("statements amounting to an opinion or 'puffery' are generally not actionable" (quoting *Intertape Polymer Corp. v. Inspired Tech., Inc.,* 725 F. Supp. 2d 1319, 1333 (M.D. Fla. 2010) (Presnell, J.)); *MDVIP, Inc. v. Beber*, 222 So.3d 555, 561 (4th DCA Fla. 2017) (rejecting as non-actionable puffery statements like promises to provide the "finest national specialists," "being associated with the best hospitals and doctors nationwide," and claims to be "a network fraternity of some of the nation's finest physicians.")

       2.    <u>SPS's Alleged Promises of Future Performance Are Not Actionable.</u>

The remaining alleged misrepresentations Plaintiff offers to support its FDUTPA claim relate to promises of future performance. Under Florida law, failure to perform a contract is not evidence of fraud, and promises of future performance are only actionable if the plaintiff pleads and proves that the speaker had a then-present intent of *not* performing. *See Palmer v. Santa Fe Healthcare Sys., Inc.,* 582 So. 2d 1234, 1236 (1st DCA Fla. 1991) ("A fraudulent misrepresentation is ordinarily actionable only as to statements of past or existing facts, and a promise of future conduct generally will not serve as a predicate for a claim of fraud" unless "it is made without any intention of performing, or with the positive intention not to perform." (citations omitted).) Here, Plaintiff does not allege that SPS had a present intent not to perform. Nor could it. The Complaint and its exhibits establish that SPS was working with Plaintiff and its third-party provider for a period of months. Plaintiff

can say what it will about the fact that the parties' relationship ultimately ended, but the Complaint and its attachments conclusively refute the notion that SPS had no intent to perform under its contracts with Plaintiff. (*See* Compl. ¶ 31 ("Plaintiff was required to obtain an alternative Electronic Data Interchange services company to *complete* the project . . . .") (emphasis added).)

### C.  SPS's Billing Practices Are Not Actionable.

It is black letter law in Florida that a plaintiff may not charge a defendant with an FDUTPA violation for simply enforcing mutually agreed upon terms. *See TRG Night Hawk Ltd. V. Registry Dev. Corp.*, 17 So.3d 782, 784 (2d DCA Fla. 2009) ("a party who signs a contract whose terms contradict the alleged misrepresentations on which he relied is barred 'from seeking relief pursuant to FDUTPA, as he acted unreasonably.'" (quoting *Rosa v. Amoco Oil Co.*, 262 F. Supp 2d 1364, 1368 (S.D. Fla. 2003).) Here, that is exactly what Plaintiff tries to do by complaining of SPS's billing practices that adhere to the terms of the parties' contract. Those practices are, therefore, not "deceptive" under the FDUTPA.

Plaintiff agreed to specific billing terms in the parties' contracts, and SPS's ability to charge Plaintiff for services or its alleged refusal to refund certain payments is measured solely by those contracts. (*See* Compl. Exs. A-C.) For example, section 4.1 of the Terms and Conditions makes it clear that Plaintiff's "obligation to pay on time is of the essence of these terms. [Plaintiff] shall pay all fees or charges to [Plaintiff's] account in accordance with the fees, charges, and billing terms in effect at the time a fee or charge is due or payable." (Compl., Ex. B, p.2.) Further, if

"[Plaintiff] believes [its] bill is incorrect, [Plaintiff] *must* contact SPS in writing within 90 days of the date of the invoice containing the amount in question *to be eligible* to receive an adjustment or credit." (*Id.* (emphasis added).)

Nowhere in the Complaint does Plaintiff allege that SPS's billing practices varied from the clear terms of the parties' agreement (because, in fact, they did not). Nor does Plaintiff allege that it ever sought an adjustment within 90 days of receiving an allegedly offending invoice. Because SPS's billing practices were in accordance with the parties' mutually agreed terms, they cannot be deceptive. *See TRG Night Hawk*, 17 So.3d at 784; *Rosa*, 262 F. Supp 2d at 1368. Because Plaintiff does not allege that SPS's billing practices were inconsistent with the parties' mutually agreed contract terms, SPS cannot be faulted for enforcing those terms.

Even had Plaintiff alleged that SPS's billing practices breached the contract, Plaintiff has not—and cannot—allege that it followed the process for seeking an adjustment or refund. Accordingly, any remedy for real or perceived invoice problems required Plaintiff to object in writing within 90 days. Because it did nothing, Plaintiff has waived any right to object to an invoiced charge.

D.   **The FDUTPA Only Provides For Actual Damages.**

"Proof of actual damages is necessary to sustain a FDUTPA claim." *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F.Supp.3d 1340, 1352 (S.D. Fla. 2017) (*quoting Dorestin v. Hollywood Imps., Inc.* 45 So.3d 819, 824 (4th DCA Fla. 2010). Florida courts construe FDUTPA's third element ("actual damages") as a term of art

that expressly excludes consequential and special damages such as lost profits, competitive harm, diverted or lost sales, and harm to goodwill or reputation. *See id.* (citing cases). "In the context of FDUTPA, 'actual damages' are defined as the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Roman v. LoanDepot.com, LLC*, 387 F.Supp.3d 1389, 1394 (M.D. Fla. 2019) (Presnell, J.) (quoting *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So.3d 178, 180 (3rd DCA Fla. 2010).) In addition to Florida's proscription of special and consequential damages, the parties have agreed that:

> IN NO EVENT WILL SPS . . . BE LIABLE FOR ANY FORM OF DIRECT, INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL (INCLUDING WITHOUT LIMITATION, CHARGEBACKS, LOSS OF USE OR LOST BUSINESS, REVENUE, PROFITS, OR GOODWILL), OR OTHER DAMAGES RESULTING FROM OR IN CONNECTION WITH ANY SERVICES PROVIDED TO CUSTOMER UNDER ANY THEORY OF TORT, CONTRACT, STRICT LIABILITY OR NEGLIGENCE, EVEN IF SPS . . . HAVE BEEN ADVISED, KNEW OR SHOULD HAVE KNOWN ABOUT THE POSSIBILITY OF SUCH DAMAGE.

(Compl., Ex. B, p.3.) According to Plaintiff, it paid $24,000 to another EDI provider to complete the project. (Compl. ¶ 31.) The Court should therefore dismiss the FDUTPA claim to the extent that Plaintiff seeks special or consequential damages in excess of this amount.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint.

## **LOCAL RULE 3.01(g) CERTIFICATION**

The undersigned counsel certifies that on May 26, 2021, counsel for Defendant conferred with counsel for the Plaintiff by phone. The Plaintiff opposes the relief requested by Defendants in this motion.

Respectfully submitted,

Dated: May 28, 2021

/s/ *Traci T. McKee*
Traci T. McKee, Esq.
Florida Bar No. 53088
FAEGRE DRINKER BIDDLE & REATH LLP
1050 K Street NW, Suite 400
Washington, DC 20001
Phone: (202) 312-7028
Fax: (202) 312.7461
traci.mckee@faegredrinker.com
*Admitted only in Florida; supervision by principals of the firm admitted to the D.C. bar*

**Attorney for Defendant SPS Commerce, Inc.**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of May, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record.


Richard E. Ramsey, Esq.
FL Bar No. 715026
WICKER SMITH O'HARA MCCOY & FORD, P.A.
50 N. Laura St., Ste. 2700
Jacksonville, FL 32202
Telephone: (904) 355-0225
Fax: (904) 355-0226
JAXcrtpleadings@wickersmith.com

                                                */s/ Traci T. McKee*
                                                Traci T. McKee, Esq.
                                                Florida Bar No. 53088
                                                FAEGRE DRINKER BIDDLE & REATH LLP
                                                1050 K Street NW, Suite 400
                                                Washington, DC 20001
                                                Phone: (202) 312-7028
                                                Fax: (202) 312.7461
                                                traci.mckee@faegredrinker.com
                                                *Admitted only in Florida; supervision by principals of the firm admitted to the D.C. bar*